MILTON DELAHANTY
*vs.*
CHICOINE MOTOR SALES, INC.

Androscoggin.    Opinion, February 1, 1956.

*Berman & Berman,* for plaintiff.

*Frank W. Linnell,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

WILLIAMSON, J.    On exceptions.    This is an action in assumpsit to recover $285.15 for taxes paid to the defendant's use.    The defense is that the action is barred by a mutual release executed prior to the commencement of suit.

The presiding Justice in the Superior Court, hearing the case without a jury, found for the defendant.

The evidence offered by the plaintiff, as stated in the bill of exceptions, may be summarized as follows:

For several years the plaintiff and the defendant were engaged in the operation of a used car lot in Berlin, New Hampshire, under the name of Twin Town Motors. Ostensibly the plaintiff was the owner, and he filed the required certificate of ownership with the state authorities. In fact the business, including the car inventory, was owned by the defendant and the plaintiff had no proprietary interest whatsoever. The defendant received the income and paid all operating expenses and other business liabilities. The plaintiff had a weekly salary of $100 plus a commission.

The City of Berlin assessed against the plaintiff a personal property tax on the used car inventory. Tax bills prior to 1954 upon being received by the plaintiff were delivered to and paid by the defendant. In like manner the 1954 tax, which is the item involved in this action, was assessed against the plaintiff on the inventory and covered only personal property owned by the defendant. In accordance with the practice followed with the tax bills of prior years and other firm bills, the plaintiff delivered this bill to the defendant for payment.

In December 1954 the parties terminated their business relationship and as a part of the dissolution executed an agreement which reads (omitting acknowledgments) as follows:

> "AGREEMENT. KNOW ALL MEN BY THESE PRESENTS that whereas Mr. Milton E. Delahanty, doing business as TWIN TOWN MOTORS in Berlin, New Hampshire, operating a Used Car Lot, formerly served as a regular sales outlet for used cars owned by Chicoine Motor Sales, Inc., a Corporation duly organized and existing in the

County of Androscoggin, State of Maine, and whereas this sales arrangement has now terminated, it is mutually understood and agreed by the undersigned parties that all monies, wages, commissions, or other consideration owed to TWIN TOWN MOTORS by Rene J. Chicoine personally, or as an officer of the Chicoine Motor Sales, Inc. has been paid and is hereby acknowledged.

"It is further understood and agreed that all unsold vehicles belonging to the Chicoine Motor Sales, Inc. have been returned to that Corporation by TWIN TOWN MOTORS, and receipt therefor is here acknowledged.

"It is further understood and agreed that Rene J. Chicoine, personally, or the Chicoine Motor Sales, Inc. is not liable for any existing debts or obligations, or for any such debts or obligations that may be in the future, incurred on behalf of TWIN TOWN MOTORS—all such obligations assumed in his interest having been paid and settled prior to the signing of this agreement.

"We hereby acknowledge the signing of this instrument to be our free act and deed, entered into and signed this 16th day of December, 1954.

/s/ Milton E. Delehanty for TWIN TOWN MOTORS, and Personally

/s/ Rene J. Chicoine for CHICOINE MOTOR SALES, INC. and Personally."

On the same date the plaintiff and Mr. Chicoine by letter authorized and directed a bank to divide between them a so-called Dealer Loss Reserve in the account of Twin Town Motors.

After the execution of the agreement the plaintiff was notified by the city that the 1954 tax bill had not been paid. On demand by the plaintiff, the defendant refused to pay, and later to avoid suit and attachment of real estate, the plaintiff paid the tax. On refusal of the defendant to reimburse him, the plaintiff brought the present action.

At the trial the plaintiff offered to prove, to quote from the bill of exceptions, "that when the agreement . . . was executed . . . he had been informed by the defendant that this tax bill had been paid by it along with all of the others, and that he relied upon this assertion and believed it to be true when he signed the memorandum; that he did not learn until later, after the agreement was executed, that defendant had failed to pay this tax bill."

The plaintiff took exceptions to three rulings by the presiding justice; (1) the exclusion of evidence to the effect stated above under the parol evidence rule; (2) the ruling "that said agreement . . . was conclusive," and the exclusion of evidence "to show that this tax bill was an obligation which defendant should pay and did not pay"; and (3) the ruling "that said agreement . . . barred the plaintiff from offering any evidence to show that the failure on the part of the defendant, under the circumstances claimed by him, to pay this tax bill, formed the basis for an implied promise on the part of the defendant to repay and refund the amount paid by this plaintiff to the City of Berlin in discharge of this tax claim . . ."

Putting to one side for the moment the agreement of December 16, it is plain that an action would lie by the plaintiff to recover the money paid to the city for the 1954 taxes. Equity and good conscience would require that the plaintiff be reimbursed for sums paid under compulsion for the use of the defendant. The decisive question is the effect of the agreement. *City of Biddeford* v. *Benoit,* 128 Me. 240, 147 A. 151 (1929); *Bither* v. *Packard,* 115 Me. 306, 98 A. 929 (1916); *Dresser* v. *Kronberg,* 108 Me. 423, 81 A. 487 (1911); *Marsh* v. *Hayford,* 80 Me. 97, 13 A. 271 (1888); *Davis* v. *Smith,* 79 Me. 351, 10 A. 55 (1887); *Ticonic Bank* v. *Smiley,* 27 Me. 225 (1847); *Kelley* v. *Merrill,* 14 Me. 228 (1837).

The exclusion of the evidence was made upon the theory that the arrangements between the plaintiff and the defendant dissolving their business relationship were completely contained and integrated in the December 16th agreement and letter, and further that the agreement was a mutual release and not merely a receipt. If it was a receipt, it was open to explanation and contradiction by parol evidence. *Crockett, Appellant,* 130 Me. 135, 154 A. 180 (1931). Without question, however, the parties intended to give and receive a release of all claims. The defendant's obligation to pay the 1954 taxes, if as claimed, existed prior to December 16, and was in terms released by the agreement. Parol evidence would not be admissible to change or alter the agreement.

The case, however, is not determined by application of the parol evidence rule. The presiding justice in his written reasons said: "If it be contended that the clause . . . 'all such obligations assumed in his interest having been paid and settled prior to the signing of this agreement,' to which statement plaintiff subscribed, was a statement of fact advanced by defendant and accepted by plaintiff to his damage, plaintiff's remedy is not upon a promise implied at law."

In our view it is here that there was error in excluding the offered evidence. The plaintiff does not seek to alter, change or reform the agreement. His position is this:

First: He may show by the instrument that there had been an agreement to pay the 1954 taxes. It is at least an admission that such was the fact.

Second: He may show by the evidence excluded that the defendant defrauded him in making the agreement, or in other words, that the defendant knowingly made a false representation and that the plaintiff relied upon it. The evidence was then offered to destroy the agreement. In

short, the plaintiff says the agreement was vitiated by the fraud of the defendant. *Morris Plan Bank* v. *Winckler,* 127 Me. 306, 143 A. 173 (1928) ; *Marston* v. *Ins. Co.,* 89 Me. 266, 36 A. 389 (1896) ; *Neal* v. *Flint,* 88 Me. 72, 33 A. 669 (1895) ; *Prentiss* v. *Russ,* 16 Me. 30 (1839).

On the issue of fraud it may be urged "that the plaintiff did not rely and had no right to rely upon the alleged misrepresentations (in our case—payment of the tax bill) because they related to facts of which he had equal or better means of knowledge than the selectmen (the defendant) had under the circumstances of this case." *Prest* v. *Inhabitants of Farmington,* 117 Me. 348, 351, 104 A. 521, 2 A. L. R. 1390 (1918).

The point, however, is not settled against the plaintiff as a matter of law; it is a question of fact. The plaintiff may show for example that the defendant in the routine transaction of Twin Town Motors business and under a duty to the plaintiff, paid tax bills in the past. Under the circumstances, could the plaintiff rely on information from the defendant, or must he inquire of the city about payment of the bill?

Recent illustrative cases on fraud and deceit are *Pelkey* v. *Norton,* 149 Me. 247, 99 A. (2nd) 918 (1953) ; *Coffin* v. *Dodge,* 146 Me. 3, 76 A. (2nd) 541 (1950).

It is not necessary that fraud be established in an action brought directly for such fraud, or that the agreement be reformed or cancelled in equity. The plaintiff is not compelled to bear the weight of fraud until relief in another action may be obtained. If fraud existed, then the agreement was not lawfully made, and if not lawfully made, then the plaintiff is not bound thereby. The plaintiff's evidence goes not to change the agreement, but to prove that the agreement never existed. This issue was open to the plaintiff in meeting the defense offered by the defendant. Accordingly the evidence should have been admitted.

We express no opinion upon what the facts are or may be found to be on a new trial.

The entry will be

*Exceptions sustained.*